**FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. §1983**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

(1) __Sylvester Shockley #00090135__
   (Name of Plaintiff)     (Inmate Number)

_____
   (Complete Address with zip code)

(2)_____
   (Name of Plaintiff)     (Inmate Number)
Delaware Correctional Center
1181 Paddock Road, Smyrna, DE 19977

_____
   (Complete Address with zip code)

(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

vs.

(1)__Ronald Hosterman__

(2)__Thomas Carroll__

(3)_____
   (Names of Defendants)

(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

**0 7 - 2 1 6**

(Case Number)
( to be assigned by U.S. District Court)

## CIVIL COMPLAINT

Jury Trial Requested

FILED

APR 20 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## I.   PREVIOUS LAWSUITS

A.   If you have filed any other lawsuits in federal court while a prisoner, please list the caption and case number including year, as well as the name of the judicial officer to whom it was assigned:

    42 U.S.C. Section 1983; 99-329; May 26, 1999;

    Judge Sue L. Robinson

_____
_____
_____
_____

II.    **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

In order to proceed in federal court, you must fully exhaust any available administrative remedies as to each ground on which you request action.

A.    Is there a prisoner grievance procedure available at your present institution?   • x Yes   • • No

B.    Have you fully exhausted your available administrative remedies regarding each of your present claims?   • • Yes   • • No

C.    If your answer to "B" is Yes:

1. What steps did you take? ___FILED AN INMATE GRIEVANCE___

2. What was the result? ___NOT GRIEVABLE___

D.    If your answer to "B" is No, explain why not: _____

III.    **DEFENDANTS** (in order listed on the caption)

(1) Name of first defendant: ___RONALD HOSTERMAN___

Employed as ___TREATMENT ADMIN.___ at ___DELAWARE CORR. CENTER___

Mailing address with zip code: ___1181 PADDOCK ROAD, SMYRNA, DE    19977___

(2) Name of second defendant: ___THOMAS CARROLL___

Employed as ___WARDEN___ at ___DELAWARE CORR. CENTER___

Mailing address with zip code: ___1181 PADDOCK ROAD, SMYRNA, DE    19977___

(3) Name of third defendant: _____

Employed as _____ at _____

Mailing address with zip code: _____

(List any additional defendants, their employment, and addresses with zip codes, on extra sheets if necessary)

2

## IV. STATEMENT OF CLAIM

(State as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach no more than three extra sheets of paper if necessary.)

1.  SEE THE ATTACHED COMPLAINT.

2.  SEE THE ATTACHED COMPLAINT.

3.  SEE THE ATTACHED COMPLAINT.

## V.  RELIEF

(State briefly exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.)

1.  PLEASE SEE THE ATTACHED COMPLAINT.

3

2.     PLEASE SEE THE ATTACHED COMPLAINT.

3.     PLEASE SEE THE ATTACHED COMPLAINT.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this ___18th___ day of _____APRIL_____, 2007____.

_____
(Signature of Plaintiff 1)

_____
(Signature of Plaintiff 2)

_____
(Signature of Plaintiff 3)

Sylvester Shockley
SBI# 00090135
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **Sylvester Shockley** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **Case No.** |
| | : | **Civil Rights Complaint** |
| **Ronald Hosterman,** | : | **Pursuant to 42 U.S.C. Sec. 1983** |
| **Treatment Administrator** | : | **Jury Trial Demanded** |
| **Delaware Correctional Center, and** | : | |
| **Thomas Carroll, Warden** | : | |
| **Delaware Correctional Center** | : | |
| **Defendants** | : | |

## A.    JURISDICTION

This complaint alleges that the civil rights of the Plaintiff, Sylvester Shockley, who presently resides at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, Delaware 19977 were violated by the actions of the below-named individuals, which actions were directed against the plaintiff at the Delaware Correctional Center, as follows:

1.    Defendant Ronald Hosterman works at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, Delaware 19977, and is employed as the Treatment Administrator. This defendant is sued in his individual and official capacity.

2.    Defendant Thomas Carroll works at the Delaware Correctional Center, 1181
      Paddock Road, Smyrna, Delaware 19977, and is employed as the Warden. This
      Defendant is sued in his individual and official capacity.

3.    All of the Defendants have acted, and continue to act under the color of State law
      at all times relevant to this complaint.

4.    Jurisdiction is invoked pursuant to **28 U.S.C. Section 1343(a)(3)** and **42 U.S.C.
      Section 1983**.

## B.    STATEMENT OF FACTS

1.    On Friday, January 6, 2006 at approximately 09:00 a.m., Delaware Correctional
      Center (DCC) Officers conducted an authorized "shakedown" in the Prison
      Braille Program room where the Plaintiff (Shockley) was employed. During the
      course of the shakedown, Officers allegedly found unauthorized items.

2.    On January 7, 2006, as a consequence of the Officers finding one (1) alleged
      unauthorized item (i.e., an open razor blade) in the Plaintiff's work area, he
      (Shockley) was served with disciplinary charges for Possession of Dangerous
      Contraband, Abuse of Privileges and Failing to Obey an Order. A copy of the
      disciplinary report is attached to this complaint as **Exhibit A**.

3.    Two (2) other inmate Braille Room workers were also charged with disciplinary
      infractions related to other types of alleged unauthorized items found during the
      course of the shakedown.

4.    Pursuant to standard prison procedures, Plaintiff and the other two inmate workers
      were suspended from the Braille Program pending the outcome of separate
      disciplinary investigations and subsequent hearings.

2

5.   On January 23, 2006 the Plaintiff received a disciplinary hearing before
     Lieutenant Bernard Williams at the Delaware Corrections Center. The hearing
     conducted related specifically to the unauthorized items seized by the
     Correctional Officers during the shakedown of the Braille Program room on
     January 6, 2006.

6.   Lieutenant Williams' investigation determined that the Plaintiff had not violated
     any prison rules of conduct, and found the Plaintiff "Not Guilty" on all charges
     stemming from the January 6, 2006 shakedown. A copy of the disciplinary
     hearing decision is attached to this complaint as **Exhibit B**.

7.   The finality of the other two Braille Program inmate workers disciplinary
     hearing(s) was: one pled guilty as charged and (he) was dismissed from the
     Program; the other inmate worker was found guilty by the prison disciplinary
     hearing officer of having unauthorized items. Nevertheless, he along with
     Plaintiff was reinstated back to the Braille Program by orders of Deputy Warden
     David Pierce.

8.   Approximately three (3) weeks later on February 13, 2006 the Work Site
     Supervisor, Mr. Robert (Sam) Miller, informed Plaintiff and the other Braille
     workers "not to report for work" the following day.

9.   On February 15, 2006, when Plaintiff attempted to report to work from his
     housing unit, Sergeant Ralph Bailey informed the Plaintiff that he and the other
     above reinstated worker were suspended pending reclassification out of the
     Braille Program by orders of Defendant Hosterman.

10.  On the same day, February 15, 2006, Counselor Linda Kemp, wrote a note to
     Plaintiff informing him that he would be reclassified because his job was being
     taken away. A copy of the note is attached to this complaint as **Exhibit C**.

3

11.     The following day, February 16, 2006, Mr. Miller handed out memos to the remaining inmate Braille Program workers, implying that the reason Plaintiff had been dismissed from the Program was for "unauthorized items" discovered during the January 6, 2006 shakedown of the Braille room. A copy of the memo is attached to this complaint as **Exhibits D-1** and **D-2**.

12.     On February 17, 2006 based upon the above referenced information, Plaintiff sent a letter to Defendant Carroll requesting an explanation and insight into the reason(s) Defendant Hosterman had suspended Plaintiff from his classified vocational training work assignment. A copy of the letter is attached to this complaint as **Exhibits E-1** and **E-2**.

13.     Plaintiff did not receive a response from Defendant Carroll.

14.     That evening, February 17, 2006, Plaintiff received a copy of Defendant Hosterman's memo from an anonymous source, stating that after senior staff review of "investigative materials", it was determined that the Plaintiff and the other reinstated inmate worker be suspended pending removal from the Braille Program. A copy of the memo is attached to this complaint as **Exhibit F**.

15.     After receiving a copy of the memo that evening (February 17, 2006), Plaintiff submitted an Inmate Grievance, stating that Defendant Hosterman did not follow departmental policies and procedures when he had Plaintiff suspended from his classified vocational training work assignment, thereby violating Plaintiff's rights to due process. A copy of the Grievance is attached to this complaint as **Exhibit G-1** and **G-2**.

16.     Two days later, on February 19, 2006, Ms. Ann Hitchcock, Volunteer Service Administrator II from the Delaware Department of Health and Social Services/Division for the Visually Impaired, handed out memos to the remaining inmate Braille workers, expressing her disappointment that several individuals

4

actions had jeopardized the Braille Program and everyone else's jobs for their own desires. A copy of the memo is attached to this complaint as **Exhibit H**.

17. Upon information and belief, the context of both Miller's and Hitchcock's memos lacked substance to establish by proof or competent evidence, that Plaintiff had been responsible for alleged "unauthorized items", and that Plaintiff was one of the individuals who by his action, had willingly "sacrificed" the Braille Program and everyone else's job for his own desires.

18. It can be rationally deduced based upon the note from Counselor Linda Kemp and the memo from Defendant Hosterman, that Plaintiff's dismissal from the Braille Program was already a foregone conclusion, and that Defendant Hosterman and/or unknown staff unreasonably conveyed to Mr. Miller and Ms. Hitchcock, that Plaintiff was one of the individuals responsible for the above described problems, and was therefore removed from the Program as a consequence without the benefit of due process.

19. On March 3, 2006, the Grievance Chairperson denied Plaintiff's grievance, stating "It is a classification issue". See the back of **Exhibit G-1**.

20. On March 6, 2006, Plaintiff received a Multi-Disciplinary Team (MDT) reclassification hearing before Lieutenant Ricky Porter and Counselor Linda Kemp. During the course of the MDT hearing, Lieutenant Porter read the previously mentioned memo from Defendant Hosterman.

21. Plaintiff brought to the attention of the MDT panel that the alleged unnamed "investigative materials" alluded to in Defendant Hosterman's memo did not prove that Plaintiff had been responsible for the alleged unnamed "investigated materials", nor did it provide any proof that the Plaintiff had violated the security, discipline, or good order of the prison, or that the Plaintiff had violated the rules detrimental to his rehabilitation or to his classified vocational training work

5

assignment which would necessitate his reclassification out of the Braille Program.

22. Upon information and belief, Plaintiff further stated that the "investigative materials" Defendant Hosterman had used to classify the Plaintiff out of the Braille Program were the same alleged "unauthorized item(s)" seized by officers during the January 6, 2006 shakedown of the Braille room and the same alleged item (the razor blade) that the Plaintiff had been found "Not Guilty" of by the prison disciplinary board.

23. Based upon these factors, the Plaintiff asked the MDT panel to nullify the hearing and reinstate him back to his classified vocational training work assignment. Lieutenant Porter denied the request and stated, "I have met with Mr. Hosterman and he gave me explicit orders to classify you out of the Braille Program."

24. Plaintiff complained to the MDT panel that the previous week Defendant Hosterman had ordered Lieutenant Porter and the MDT panel to reinstate the other suspended worker back to the Braille Program who had been suspended for the same "investigative materials" the Plaintiff had been suspended for, and was now back working in the Braille Program.

25. Plaintiff also complained that Defendant Hosterman's actions against the Plaintiff were arbitrary and capricious, and that the Plaintiff was being treated differently from the other inmate worker who had been reinstated back to work in the Braille Program.

26. Counselor Kemp stated, "I also had a conversation with Mr. Hosterman about you and he expressed to me that your case is different from the other worker because you have had 'trust issues' from your present and past jobs within the prison."

6

27. Plaintiff pointed out to the panel that he has an exemplary employment history and that there was no evidence presented at the hearing to support or justify Defendant Hosterman's assertion of Plaintiff having 'trust issues' from his present or past jobs within the prison.

28. Lieutenant Porter stated, "I'm sorry, we have no other choice but to recommend to the IBCC (Institutional Based Classification Committee) to reclassify you out of the Braille Program. However, we will attach Mr. Hosterman's memo to the classification form as the only reason for us recommending your reclassification out of the Program."

29. On March 9, 2006 Plaintiff sent a letter of appeal to Evelyn Stevenson, the IBCC Classification Officer, concerning the reasons the MDT panel had made the decision to recommend Plaintiff's reclassification out of his vocational training work assignment. Plaintiff also requested reinstatement back to the Braille Program. A copy of the appeal is attached to this complaint as **Exhibits I-1** and **I-2**.

30. Upon information and belief, on March 16, 2006, the IBCC approved Plaintiff's reinstatement back to his vocational training work assignment. However, on that same date, Defendant Hosterman made a rare appearance before the IBCC ostensibly to observe the proceedings and the outcome, and after the IBCC made the decision to return the Plaintiff back to work at the Braille Program, Defendant Hosterman went and conferred with Defendant Carroll to convince him to overturn the IBCC decision, preventing Plaintiff's returning to the Braille Program.

31. On March 22, 2006, not knowing that the IBCC had officially approved the Plaintiff's reinstatement back to the Braille Program, or that Defendant Hosterman had gone to Defendant Carroll to convince him to overturn the IBCC decision, at approximately 09:30 a.m., outside, in front of the Education Building

("L" Building), Plaintiff approached Defendant Hosterman and asked him for the real reason he had Plaintiff suspended from his job pending reclassification. Defendant Hosterman threatened Plaintiff by saying, "...You have trust issue...As long as I have anything to do with it, I will do everything I can to make sure you will never get your job back..." For the Court's convenience, the full conversation Plaintiff had with Defendant Hosterman is part of a letter Plaintiff sent to Defendant Carroll. That part of the letter is attached hereto as **Exhibit J-4**.

32. On April 17, 2006 Plaintiff sent Defendant Carroll a letter of appeal. In the appeal, Plaintiff indicated how his rights were violated and described the conversation he had with Defendant Hosterman and requested an official response as to the reasons Plaintiff had not been permitted to return to his classified vocational training work assignment. A copy of that letter of appeal is attached to this complaint as **Exhibits J-1, J-2, J-3, J-4** and **J-5**.

33. Plaintiff did not receive a response from Defendant Carroll.

34. On April 25, 2006 Ms. Hitchcock sent Plaintiff a letter. In the letter, Ms. Hitchcock states, "DE Correctional Center has made the decision to dismiss you from the Braille Program because of the contraband found in your area..." A copy of the letter is attached to this complaint as **Exhibit K**.

35. Upon information and belief, Ms. Hitchcock's letter was in the same prejudicial context and rationale as referenced in paragraphs 17 and 18 of this complaint.

36. On May 16, 2006 Plaintiff received an official copy of the IBCC March 16, 2006 decision, approving Plaintiff's reinstatement back to the Braille Program. A copy of the decision is attached to this complaint as **Exhibit L**.

37. On May 30, 2006 Plaintiff sent Defendant Carroll a final letter of appeal. In this appeal, Plaintiff recounted the events that lead up to the day he had received the

8

official copy of the IBCC decision and pleaded for Defendant Carroll's intervention to reinstate Plaintiff back to his classified vocational training work assignment. A copy of the letter is attached to this complaint as **Exhibits M-1 and M-2**.

38.  Plaintiff did not receive a response from Defendant Carroll.

39.  On May 31, 2006 Mr. Miller sent a "fair well" letter to Plaintiff that said, "Delaware Correctional Center has made the decision to dismiss you from the Braille Program. It is sad that we part under these circumstances…" A copy of the letter is attached to this complaint as **Exhibit N**.

40.  Upon information and belief, Mr. Miller's letter was in the same prejudicial context and rationale as in the above letter from Ms. Hitchcock and as referenced in paragraphs 17 and 18 of this complaint.

41.  Plaintiff asserts that both defendants and/or unknown staff orchestrated the removal of Plaintiff from his classified vocational training work assignment, in retaliation for Plaintiff's being found "Not Guilty" of violating any rules of conduct by the prison disciplinary board stemming from the January 6, 2006 shakedown, while ordering the return to work of the other suspended inmate worker back to the same classified vocational training work assignment, after he had been found "Guilty" of having one or more unauthorized item(s) by the prison disciplinary board stemming from the January 6, 2006 shakedown of the Braille Program room.

42.  Plaintiff asserts further that the defendants and/or unknown staff used the classification system as the means to punish and to deter Plaintiff from any hope of ever returning to his legitimate classified vocational training work assignment, creating an unusual and significant hardship on Plaintiff in relation to the ordinary incidents of prison life.

9

**43**.   Plaintiff asserts that both defendants and/or unknown staff ignored Plaintiff's plight and the IBCC decision, and by tacit agreement acted in concert to prevent Plaintiff's return to his classified vocational training work assignment, thereby imposing upon the Plaintiff an unusual and significant hardship in relation to the ordinary incidents of prison life.

**44**.   Plaintiff further asserts that both defendants and/or unknown staff actions have violated long established guidelines and rules of conduct relating to inmate institutional adjustment and the code of conduct for Departmental staff, thereby discriminating against Plaintiff and imposing upon him cruel and unusual punishment in relation to the ordinary incidents of prison life.

## C. CAUSES OF ACTION

**45.**    Plaintiff support the following claims by reference to the previous paragraphs of the complaint:

## CLAIM I

**46.**    Defendants arbitrarily removed and terminated the Plaintiff from his classified vocational training work assignment without a valid reason, subjecting the Plaintiff to treatment different from other similarly situated inmates at the Delaware Correctional Center.   There is no rational basis for the dissimilar treatment and cannot further legitimate prison interests. A rational review of the dissimilar  treatment would show that Defendants actions have deprived and continue to deprive Plaintiff of his procedural and substantive due process and equal protection rights under state law and prison regulation **11 Del. C. Section 6535; DOC Administrative Regulations Section 1135; Article I, Section 7 of the Delaware Constitution and the 5th, 6th, and 14th Amendments to the United States Constitution.**

## CLAIM II

**47.**    Defendants in retaliation for the Plaintiff being found not guilty of any rule infraction by the prison disciplinary board stemming from the January 6, 2006 shakedown of the Braille Program room, retried Plaintiff a second time in absentia and with that deliberate act, inflicted punishment upon the Plaintiff by removing and terminating him from his classified vocational training work assignment in violation of the Plaintiff's procedural and substantive due process under state law and prison regulations **11 Del. C. Section 6535; DOC Administrative Regulations Section 1135; Article I, Section 7 of the Delaware Constitution and the 1st, 5th, 6th, 8th and14th Amendments to the United States Constitution.**

## CLAIM III

**48.**    Defendants under false pretense orchestrated the removal and termination of Plaintiff from his classified vocational training work assignment without showing or providing proof that the Plaintiff had violated the security, discipline or the good order of the prison, or that the Plaintiff had violated the rules detrimental to his rehabilitation or to his classified vocational training work assignment, subjecting the Plaintiff to treatment different from other similar situated inmates at the Delaware Correctional Center.    There is no rational basis for the dissimilar treatment and cannot further legitimate prison interests.   A rational review of the dissimilar treatment would show that Defendants actions have deprived and continue to deprive Plaintiff of his procedural and substantive due process and equal protection rights under state law and prison regulations **11 Del. C. Section 6535; DOC Administrative Regulations Section 1135; Article I, Section 7 of the Delaware Constitution and the 5th, 6th and 14th Amendments to the United States Constitution.**

## CLAIM IV

**49.**    Defendants  by tacit agreement violated Plaintiff's pre- and post- rights to notice and the opportunity to be heard prior to and after removing and terminating his employment with the Braille vocational training Program in response to the alleged breach of prison rules, subjecting the Plaintiff to treatment different from other similar situated inmates at the Delaware Correctional Center.  There is no rational basis for the dissimilar treatment and cannot further legitimate prison interests.  A rational review of the dissimilar treatment would show that Defendants actions have deprived and continue to deprive Plaintiff of his procedural and substantive due process and equal protection rights under state law and prison regulations **11 Del. C. Section 6535; DOC Administrative Regulations 1135; Article I, Section 7 of the Delaware Constitution and the 5th, 6th and 14th Amendments to the United States Constitution.**

## CLAIM V

50.    Defendants discriminated against the Plaintiff when they removed him and another inmate from their classified vocational training work assignment for the same alleged breach of prison rules, and then ordered and orchestrated the return of the other inmate back to his classified vocational training work assignment after he had been found guilty of breaching one or more prison rules by the prison disciplinary board then ordered and orchestrated the termination of the Plaintiff from his classified vocational training work assignment in retaliation for the Plaintiff being found not guilty of breaching any prison rules by the prison disciplinary board and for filing legitimate appeals for reinstatement back to his classified training work assignment, subjecting the Plaintiff to treatment different from other similar situated inmates at the Delaware Correctional Center. There is no rational basis for the dissimilar treatment and cannot further legitimate prison interests. A rational review of the dissimilar treatment would show that Defendants actions have deprived and continue to deprive Plaintiff of his procedural and substantive due process and equal protection rights under state law and prison regulations **11 Del. C. Section 6535; DOC Administrative Regulations 1135; Article I, Section 7 of the Delaware Constitution and the 1st, 5th, 6th, 8th and 14th Amendments to the United States Constitution.**

## CLAIM VI

51.    Defendants unlawfully deprived Plaintiff of his right to earn meritorious good time credits monthly wages and participation in the Braille vocation training and work Program in violation of state law and prison regulations, namely, **11 Del. C. Section 4382 (1987); 11 Del. C. Section 4384 (1987); repealed by 67 Del. Laws, C. 130, effective July 17, 1989 Id. At 11Del. C. Section 4382; DOC Administrative Regulations Section 11135; BOP Inmate Case Record Management Procedure 7.1; 11 Del. C. Sections 6529; 6530; 5631; 6531A; 6532** in violation of Plaintiff's procedural and substantive due process and equal protection rights under **Article I,**

13

Section 7 of the Delaware Constitution and the 5th, 8th and 14th Amendments to the United States Constitution.

## D.  PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court:

1.    Declare that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States.

2.    Enter a permanent injunction ordering defendants Thomas Carroll, Ronald Hosterman, their successors, agents, employees and all persons acting in concert with them from using or abusing their authority to retaliate against the Plaintiff as a result of filing legitimate grievances or lawsuits under the laws of the United States; immediately reinstate the Plaintiff back to his former classified Braille vocational training work assignment; immediately reinstate all pay and meritorious good time credits forfeited from the date of the Plaintiff's arbitrary termination from the Braille Program to the present,   and all rights and privileges previously enjoyed; expunge the proceedings that arbitrarily terminated him from his classified vocational training work assignment, and all other written communications or indicia to the detriment of the Plaintiff from his institutional file and/or record.

3.    Enter judgment in favor of Plaintiff for nominal, compensatory, and punitive damages, as allowed by law, against each Defendant jointly and severally.

4.    Order such additional relief as this Court may deem just and proper.

Date:    April 18, 2007

Respectfully submitted,

*Sylvester Shockley*

Sylvester Shockley

SBI# 00090135

Delaware Correctional Center

Smyrna, Delaware 19977

Pursuant to **28 U.S.C. Section 1746,** I declare and verify under penalty of perjury under the laws of the United States of America that the facts stated in the complaint are true to the Plaintiff's knowledge, and that any facts stated in information and belief are true to the best of the plaintiff's knowledge and belief. Executed on

Sylvester Shockley

16

Disciplinary#
1022629

DCC **Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

Date: **04/19/2006**

## DISCIPLINARY REPORT

| Disciplinary Type: Class1 | | Housing Unit Bldg W1 | | IR#: 1029067 | | |
|---|---|---|---|---|---|---|
| SBI# | Inmate Name | | Inst. Name | Location Of Incident | Date | Time |
| 00090135 | Shockley, Sylvester C | | DCC | Bldg.B Braille | 01/06/2006 | 09:10 |

Violations: 1.18/200.218 Possession of Dangerous Contraband, 2.01/200.105 Abuse of Privileges, 2.06/200.108 Failing to Obey an Order

| Witnesses:1. Miller, Robert | 2. N/A | 3. N/A |
|---|---|---|

### Description of Alleged Violation(s)

On Friday; January 02, 2006 At 0910 Hours I, Lt. Bradley Lee Was Involved In A Shakedown Of The Braille Room In B Building Education. At This Time I Discovered An Open Razor Blade In The Work Area Of I/M Sylvester Shockley #090135. The Work Area Was Identified As I/M Shockley'S By Mr. Robert Miller-Braille Instructor. I/M Shockley Was Questioned As To Why He Had A Razor In His Work Area. I/M Shockley Claimed That He Uses The Razor For Cutting Fine Cuts In The Graphics That Are Used. Mr. Miller Confirmed This Story And Said That He Was Aware That I/M Shockley Was Using This Razor. I/M Shockley Will Be Temporarily Suspended From His Job Pending The Outcome Of This Write Up. Mr. Miller Was Advised That Inmates Are Not To Be In Possession Of Such Items As Mentioned Above.

Reporting Officer: Lee, Bradley Jr.(Staff Lt./Lt)

### Immediate Action Taken

Immediate action taken by: Lee, Bradley Jr.-Staff Lt./Lt

N/A

### Offender Disposition Details

Disposition: N/A                    Date:N/A        Time: N/A        Cell secured? No

Reason: N/A

Disposition Of Evidence: Sent To The S/C Office

### Approval Information

Approved: [x]        Disapproved: [ ]   Approved By: Stevenson, Mathew  (Staff Lt./Lt)

Comments: N/A

### Shift Supervisor Details

Date Received:        Time:        Received From: Stevenson, Mathew

**Shift Supervisor Determination:**

[ ]   Upon reviewing this Disciplinary Report, I conclude that the offense may be properly responded to by an immediate revocation of the following privileges(see reverse side) for _____ hours not to exceed 24 hours)

[X]   Upon reviewing this Disciplinary Report, I conclude that the offense would be properly responded to by Disciplinary Hearing.

Stevenson, Mathew  (Staff Lt./Lt)

I have received a copy of this notice on **DATE:** _____ **TIME:** _____ and have been informed of my rights to have a hearing and to present evidence on my own behalf. I understand, if found guilty, I will be subject to imposition of sanctions outlined in the Rules of conduct.

Preliminary Hearing
Officer: _____        Offender: _____

                                                        Shockley, Sylvester C

EXHIBIT  A

| *DR# 1022629 | **DCC Delaware Correctional Center** Smyrna Landing Road **SMYRNA DE, 19977** Phone No. 302-653-9261 | Date: **04/19/2006** |

## DISCIPLINARY HEARING DECISION

**Inmate :** Shockley, Sylvester C          **SBI#:**00090135    **Type:**Class 1

**Institution:**DCC  Delaware Correctional Center          **Hearing Date:** 01/23/2006    **Time:** 09:55

**Inmate Present:** Yes      **Reason(If No):** N/A

**Violation:** 1.18/200.218 Possession of Dangerous Contraband, 2.01/200.105 Abuse of Privileges, 2.06/200.108 Failing to Obey an Order

**Inmate PLEA:** Not Guilty

**Inmate Statement:** Offend. states he did have items. But his wk. site seperv. permitted him to use for work projects.

**Witness Name:** Miller, Robert

**Testimony :** N/A

**Decision :**Not Guilty

**Rational :** Base on rept. from accuser and wk. site superv. allowing offend. to use item to wk. with.

**Sanctions:** N/A

### HEARING OFFICER'S SIGNATURE

Williams, Bernard

I understand that I may appeal the decision of a Class II Hearing to the Class I Hearing Officer.I may appeal the decision of a Class I Hearing to the facility administrator.I also understand that I have 72 hours to submit my notice of appeal in writing to the Class I Hearing Officer if I am appealing a Class II Hearing decision or the Warden if I am appealing a Class I Hearing decision.

**I [ ]    DO    [X]    DO NOT INTEND TO APPEAL**

**INMATE's SIGNATURE**

### ORDER TO IMPLEMENT SANCTIONS

[X]    Inmate does not wish to appeal          [ ]    Appeal has been denied by Commissioner or Designate

[ ]    Sanctions have been modified          [ ]    Time Limit(72 Hours since hearing) for appeal has expired

**It is here by ordered to implement the sanctions:**

| Sanctions | Start Date | Days | End Date |
|---|---|---|---|
| | | | |

EXHIBIT  B

Sylvester,                2/13/06

You will be
reclassified, in the
near future because
of your job (Bailey)
was taken away.

Thanks

EXHIBIT  C

**Memorandum**

**To:**     Members of the Men With a Message Program

**From:**   Sam Miller - Braille Instructor

**Date:**   16 February 2006

**Re:**     Program Reminders

On Friday, 6 January 2006, DCC Officers conducted complete detailed inspection of the Braille Room and resulted were very embarrassing for the program and DCC. The officers were professional and thorough. Their inspection resulted in the discovery of unauthorized items, and the dismissal of some key workers.

This letter is re-emphasis restrictions and to ensure you that I will follow up with corrective action if these restrictions are not followed by all.

1.  Graphic preparation will be done using the Graphic Kits. The use of unauthorized tools, i.e., needles, razors or and other objects that are not consistent with DCC standard will not be authorized and will never be tolerated. Card board and material that can be used for graphics, will not be stored at work stations for individual use or use on future projects. We will all use material from the Graphic Material Box, which is stored in our locker; a central location for all.

2.  Use of any tobacco products or their containers (other than the cigar boxes, which have already been currently assigned) will not be brought in to the room, ever.

3.  Clothes, Shoes, Commissary items and the like: will, under no circumstances be store in the Braille Room. If you should bring an extra garment to keep warm during your journey across the compound, ensure that you take it with you when you leave. Shopping bags with these items will not be brought in at all.

4.  Razors: will be no longer brought in to the Braille Room. We have no need for them in the program. For those who must get up at 0330 am for breakfast, or have early visits, etc. and do not get to shave, it is very unfortunate. But the number of razors found in the room has become problematic. It must be done another way.

EXHIBIT D-1

1

5.  Personal Books, and Magazines: You will be limited to only 2, to include a Bible, Koran or other personal religious references. After 0800hrs there will be no reading of personal books or magazines. If you care to read during the time lunch after the Officer calls "Chow" it will be permissible.

6.  News papers will not accumulate in the Braille Room. They will be discarded after a couple of days.) The same reading restrictions apply to news papers as personal books.

7.  There will be no boxes stored under desk, ever.

New computers have been purchased by DVI, for this program. Only authorized Braille/Large Print assignments will be done on these computers. The software programs that have been authorized will be the only ones installed on these computers. Inspections will be done frequently on all computers. We are entering an exciting time with new computers, software, and training and we need to step up and take the challenge.

The Administration, and Ms. Hitchcock in particular, deserve to have confidence the program and the quality of the products you are producing. We need to work at getting our reputation back to what it was and it is my responsibility to make that happen.

Sylvester Shockley
SBI # 090135, W-1 Building
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

February 17, 2006

Warden Thomas Carroll
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

Dear Warden Carroll:

On February 15, 2006 at approximately 10:30 a.m., I was informed by Sergeant Bailey (8-4 Shift Building OIC) that I was suspended from my job based upon an Order from Mr. Ron Hosterman. There seems to be some kind of confusion because approximately five weeks ago, a shakedown was conducted in the Braille Program where items were confiscated. Following that shakedown, I received a write-up for possession of an open razor blade. I was suspended from my job pending resolution of that write-up. At the Adjustment Board Hearing I was found "Not Guilty" and was then re-instated back to my job in the Braille Program.

Approximately two weeks after returning to work, I find myself again suspended from my job – apparently over the materials that were confiscated during the shakedown, which are now somehow being attributed to me.

I do not understand why this is happening. The confiscated materials that were obtained during the shakedown were not found in my assigned work area, nor was I ever charged with having any of those materials other than the open razor blade.

I was taken completely by surprise by this action because I was not aware that any type of investigation was being conducted involving me after my Adjustment Board Hearing. Now today (February 16, 2006), I received a note from Counselor Kemp that I would be "reclassified in the near future because of [your] job (Braille) being taken away."

I am now asking for clarification of the steps or procedures used by Mr. Hosterman, or other Senior Administrative Staff Personnel, to make me somehow responsible for the confiscated materials, and then determine that I should be suspended a second time pending reclassification. It seems to me that I am being punished, even though the Adjustment Board determined that I was not guilty of any type of rule infraction.

EXHIBIT  E-1

Warden Thomas Carroll
Letter Continued, Page 2


I am also requesting a due process hearing before removing me from my job with finality, so that I may have the opportunity to refute the evidence that has been used to remove me from my job.

Thank you very much for considering this letter. I will be looking forward to a response from you real soon.


Sincerely,

Sylvester Shockley
SBI# 090135


cc:    Commissioner Stan Taylor
       Deputy Warden Burris
       Deputy Warden Pierce
       Major Scarborough
       Captain Hazzard
       Mr. Ron Hosterman
       Ms. Evelyn Stevenson
       Mr. Kenneth Milbourne
       Counselor Kemp
       S. Haith
       Mr. A. Hitchcock
       S. Miller
       Mr. Rickey Porter
       File

EXHIBIT E-2

**From:**   Hosterman Ron (DOC)

**Sent:**   Wednesday, February 15, 2006 10:38 AM

**To:**     Holland Cecil (DOC); Whelan Maureen (DOC); Kemp Linda (DOC); Russel Donna (DOC); Hutchins
Tawanya (DOC); Stevenson Evelyn (DOC); TRADER MICHAEL (DOC); BAILEY RALPH (DOC);
Milbourne Kenneth (DOC); Haith Sharon (DOC); Hitchcock Ann (DHSS); Porter Ricky (DOC)

**Cc:**     Mitchell Lorrie (DOC)

**Subject:** Suspension pending classification removal of Braille program workers

To all,

Following review of investigative materials by Senior Staff it has been determined that the following are
suspended immediately pending removal from the Braille program:

Durwin Harman 161783 S-1

Sylvester Shockley 090783 W-1

Recover their passes and do not send them to work at the Braille program. The MDT should reclassify them out of
the program  as soon as possible. RGH

EXHIBIT  F

**FORM  #584**

**GRIEVANCE FORM**

FACILITY: _DCC_                    DATE: _2·17·06_

GRIEVANT'S NAME: _Sylvester Shockley_    SBI#: _090135_

CASE#: _24129_                   TIME OF INCIDENT: _10:30 A.M._

HOUSING UNIT: _W-1_

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

On 2·15·06 at approx. 10:30 A.M., I was informed by
Sgt. Bailey (4-8 W-1) that I was suspended from my job
based upon an memo from Mr. Ron Westerman stating,
"following review of investigative materials by Senior
Staff it has been determine that the following are
suspended immediately pending removal from the
Braille program. Ludwin Harmon --- Sylvester Shockley
--- The MDT should reclassify them out of this
program as soon as possible." Due to this order
from Ron Westerman, my entitlement to "Due process and
(Next page)

ACTION REQUESTED BY GRIEVANT: _____
Be reinstated back to my job, with all
back pay.

GRIEVANT'S SIGNATURE: _Sylvester Shockley_  DATE: _2·17·06_

WAS AN INFORMAL RESOLUTION ACCEPTED?  _____(YES)  _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE: _____  DATE: _____

**IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.**

cc: INSTITUTION FILE
    GRIEVANT

**RECEIVED**

**FEB 21 2006**

April '97 REV

EXHIBIT G-1

Inmate Grievance Office

**FORM  #584**

**GRIEVANCE FORM**

FACILITY: _DCC_                                   DATE: _2 - 17 - 06_

GRIEVANT'S NAME: _Sylvester Shockley_             SBI#: _690135_

CASE#: _24124_                                    TIME OF INCIDENT: _10:30 A.M._

HOUSING UNIT: _W - 1_

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

_other rights have been violated according_
_to establish written policy and procedures of_
_the DOC Reg. #1135, Inmate Employment and_
_Compensation, Section G. Suspension and term-_
_ination. On the way Mr. Kosterman and/or_
_other senior staff went about suspending me_
_and reclassifying me from my job._
_Attached is a letter I sent to Warden Carroll_
_that I request to be a part of this grievance._

ACTION REQUESTED BY GRIEVANT: _____

_____

_____

_____

_____

GRIEVANT'S SIGNATURE: _Sylvester Shockley_    DATE: _2 - 17 - 06_

WAS AN INFORMAL RESOLUTION ACCEPTED?      _____ (YES)  _____ (NO)

(COMPLETE  ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE: _____      DATE: _____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

**RECEIVED**

April '97 REV

FEB 2 1 2006

EXHIBIT G-2

Inmate Grievance Office

## MEMO

**TO**: Members of the Men with a Message Program

**FROM**: Ann N. Hitchcock,
Volunteer Service Administrator 2
Division for the Visually Impaired

**DATE**: February 19, 2006

**RE**: Dismissals

As the events of the past few weeks come to light, I must express my disappointment. I, and many of you, have spent the past sixteen years developing a program which meets the needs of the blind community, while allowing inmates to develop skills which have a direct, tangible results both for the inmate and for the outside community. Our program has been recognized with both national and statewide recognition.

However, several individuals were willing to sacrifice the program and all of our jobs for their own desires. This program works within the structure and rules of the DE Correctional System, and this program can be shut down if each member of the program does not follow these rules explicitly. We are going to have to work very hard to regain the confidence of DCC and DVI, because of the action of several individuals.

On a more positive note, in a few weeks we will be installing new computers with new software. These translation programs are the wave of the future. They will help us produce Braille quicker and hopefully easier. Training and support will be provided to you as we go thru this transition period.

We can learn from our errors, make corrections, and move on, which is where we are now. Mr. Miller and I will be doing this and we hope you will consider doing the same.

EXHIBIT  H

Sylvester Shockley
SBI # 090135, W-1 Building
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

March 9, 2006

Ms. Evelyn Stevenson
Classification Officer
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

RE: **Reclassification Hearing**

Dear Ms. Stevenson:

On the afternoon of March 6, 2006 at approximately 1:30 pm, I had a reclassification hearing conducted by the M.D.T. Board. Present at this hearing were myself, Staff Lieutenant Porter and Counselor Kemp. When the hearing commenced, I asked both Lt. Porter and Ms. Kemp for an explanation as to why I was being reclassified. Lt. Porter then read a Memo from Mr. Hosterman stating that I should be reclassified out of the Braille Program, and he indicated that the reason for the reclassification was based upon "investigative materials".

I explained to the M.D.T. that I had been found "Not Guilty" by the Adjustment Board and according to Captain Hazard, Deputy Warden Pierce gave authorization to have me re-instated back to my job at the Braille Program. However, approximately two weeks later, Mr. Hosterman improperly suspended me from my job without an Incident Report (Form 404) filed by my worksite supervisor, circumventing Departmental SOP's in accordance with Department of Corrections Policy Number 1135 titled "Regulations Governing Inmate Employment and Compensation", Section G, thereby violating my due process rights. Additionally, I have never received any type of written notification as to "why" I had been suspended pending termination. Please take note that I have discovered that it is the Support Services Manager that is the person behind the scenes who has pre-determined that I should be terminated from my job which prompted Mr. Hosterman to start the termination process.

Lt. Porter informed me that he is aware of the situation and that he went to Mr. Hosterman to discuss this matter. However, according to Lt. Porter, Mr. Hosterman "Ordered" him to follow his directive explicitly. To further expound on the matter, I informed the M.D.T. that I was aware of the fact that Inmate Harmon got his job back. It should be noted, according to him, that the counselor at his M.D.T. hearing talked to Mr. Hosterman and she informed him that he would get his job back, but that I would not. Inmate Harmon did return to work on March 6, 2006.

EXHIBIT  I-1

Ms. Evelyn Stevenson
Letter Continued, Page 2


During my hearing, Mrs. Kemp confirmed that she had talked to Mr. Hosterman and that he had expressed to her that Inmate Harmon would return to work, but my case was different because I had "trust issues" from past and present jobs within the Institution. Therefore, I had to be reclassified out of the Braille Program. Once again, I spoke to the M.D.T., sharing with them that before the Braille Program had hired me, one of the requirements would be trustworthiness. According to the M.D.T., there is nothing in my record to discredit my trustworthiness. Nevertheless, Lt. Porter informed me that he had no choice but to recommend to the I.B.C.C. for me to be reclassified out of the Braille Program, based solely upon Mr. Hosterman's order.

The actions taken against me are unreasonable, fundamentally wrong, and are an abuse of administrative authority. As such, it places me in an untenable position. Therefore, I appeal to you and all Senior Staff members to stop this reclassification process, and reinstate my job back to me.

Thank you very much for considering this letter. I will look forward to a response from you real soon.

Sincerely,

Sylvester Shockley


cc:     Commissioner Stan Taylor
        Warden Thomas Carroll
        Deputy Warden Betty Burris
        Deputy Warden Pierce
        Major Scarborough
        Captain Hazard
        Support Services Manager Tonya Smith
        Mr. Ron Hosterman
        Mr. Kenneth Milbourne
        Counselor Kemp
        Ms. Sharon Haith
        Ms. Ann Hitchcock
        Mr. Sam Miller
        Staff Lieutenant Porter
        File (2) Copies

EXHIBIT I-2

Sylvester Shockley
SBI # 090135, W-1 Building
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

April 17, 2006

Warden Thomas Carroll
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

RE: **Classification Veto**

Dear Warden Carroll:

Since you have not responded to any of my letters, I can only surmise that you have vetoed the IBCC decision with respect to my return to work at the Braille Program. If this is true, please accept this letter as my formal appeal towards your veto of the IBCC approval for my return to work. I am requesting an official response from you or your authorized designee as to the reason your decided to veto my return to work in the Braille Program. Following is the basis for my appeal:

1.      Administrators suspended and then had me reclassified from my job assignment solely upon the suggested implication of "investigative materials".

2.      Administrators were biased and used insufficient information relating to my character and work history with the strong intentions of destroying staff confidence in me for the purpose of reclassifying me from my job assignment.

3.      Administrators failed to follow prescribed Department of Corrections SOP's when suspending and terminating me from my work assignment.

4.      Administrators discriminated against me by treating me differently from other inmates similarly situated.

5.      Administrators deprived me of the opportunity to continue earning good-time credits through gainful employment and a substantive monthly salary used as my primary means of financial support.

6.      Administrators denied me the opportunity to challenge the adverse decision against me through the grievance and administrative procedures available as recourse and/or remedy for adversarial disputes per Department of Correction SOP.

EXHIBIT   J-1

Warden Thomas Carroll
Letter Continued, Page II

    7.     Administrators violated my rights to due process of law by punishing me after
           I had been found "Not Guilty" of any wrongdoing or rule infraction.

The following are the facts of this matter to the best of my knowledge and
recollection:

On January 6, 2006 at approximately 9:30 am, DCC Officers conducted a shake down
of the Braille Room based on a letter sent to Captain Hazard from an inmate concerning
tobacco allegedly located in the room.

Once the shake down commenced, Officers found clothing, books, different pairs of
sneakers, open razor blades and other items. One pair of the sneakers came into question
that were found in a cabinet by the expressed permission of Mr. Miller, the Braille Room
supervisor. However, when Lieutenant Lee questioned Mr. Miller about the sneakers,
Mr. Miller claimed that the sneakers belonged to him. Upon further questioning, Mr.
Miller admitted to Lieutenant Lee that the sneakers were not his personal property, but
they belonged to me. (Please take note: this incident is part of Lieutenant Lee's official
report submitted in conjunction with the shake down incident.)

After the shake down was completed, I received a "write-up" for having an open
razor blade in my work area. I was then suspended from my job pending the outcome of
the Adjustment Board Hearing. At the Adjustment Board Hearing, I was found "Not
Guilty" based upon the acknowledgement provided by Mr. Miller indicating that he was
aware of the various types of uses of razor blades in the Braille Room. (Please take note:
Mr. Millers' acknowledgement can be verified in the write-up Lt. Lee submitted against
me to the Adjustment Board. In Mr. Miller's submitted report, he declares he had no
knowledge of me having a razor blade. His written statement is a direct contradiction to
the statement he gave to Lt. Lee.)

After the Adjustment Board Hearing it was revealed to me by a certain staff member
that certain Senior Staff were upset with the verdict Lieutenant Williams had rendered
and that he had to submit a report explaining why he had found me "Not Guilty". This
certain staff member also indicated to me that there would be possible retaliation against
me from Senior Staff because of the verdict. Later, after I returned to work by approval
of Deputy Warden Pierce, Mr. Miller informed me that he had a meeting with Support
Services Manager Sonya Smith to discuss the items found in the Braille Room during the
aforementioned shake down. Mr. Miller also indicated that Ms. Smith had informed him
that Senior Staff were 'pissed off' with the Braille Program, including Deputy Warden
Betty Burris, concerning the items found in the Braille Room and his report about me and
his lying to the officer about the sneakers, and that Senior Staff would meet to decide

Warden Thomas Carroll
Letter Continued, Page III

who was responsible for the problems in the Braille Program and that they would deal with that person accordingly. Mr. Miller then revealed to me that he needed a copy of my receipt for the sneakers, to give to Ms. Smith, because there was no receipt for the sneakers on file. I gave a copy of my receipt to Mr. Miller. (Please take note: A staff member indicated to me that Ms. Smith was pushing to have me terminated as the cause of the problem in the Braille Program.)

On February 15, 2006 Mr. Hosterman sent out a memo to certain staff members that said, "Following review of investigative materials by Senior Staff, it has been determined that the following are suspended immediately pending removal from the Braille Program:

Durwin Harman 161783 S-1
Sylvester Shockley 090783 W-1

Recover their passes and do not send them to work at the Braille Program. The MDT should reclassify them out of the program as soon as possible. RGH" (Please take note: I have never received from Mr. Hosterman or from any other staff member a written notification as to what materials I am under investigation for, nor have I received any written notification as to what I have done wrong to deserve removal from my job through the classification process, denying me the opportunity to challenge the adverse decision against me.)

On February 17, 2006 I wrote a letter of complaint to you concerning the suspension, but I have not yet received a response from you. I filed a grievance on the suspension, however the Grievance Chairperson denied the grievance, claiming that jobs are a classification issue and not grievable.

On February 27, 2006 the other prisoner who had been suspended along with me had an MDT Hearing. According to him, Ms. Evelyn Stevenson had talked to Mr. Hosterman and that Mr. Hosterman had given his approval for the other prisoner to go back to work, but that I would not get my job back. (Please take note: the other prisoner did return to work in the Braille Program on March 6, 2006.)

On March 6, 2006 the MDT held a hearing with me present. Lieutenant Porter informed me at that time that he had no other choice but to reclassify me out of the Braille Program by explicit order from Mr. Hosterman, based upon the talk he had with Mr. Hosterman and the memo he read to me from Mr. Hosterman. Mrs. Kemp informed me at the hearing that she too had talked to Mr. Hosterman, and that he had indicated to her that I have "trust issues" from past and present jobs within the institution, so I had to be reclassified out of the Braille Program. Lt. Porter pointed out to me that he could only attach Mr. Hosterman's memo to the classification form as the only reason for the recommendation for reclassification from the Braille Program to the IBCC. (Please take

Warden Thomas Carroll
Letter Continued, Page IV

note:  One of the requirements to be hired in the Braille Program is trustworthiness.
According to the MDT, there is nothing in my file to discredit my trustworthiness from
any job I have held in this prison.  Also, please allow me to point out that I am being
discriminated against by Staff treating me differently from other inmates similarly
situated.)

On March 9, 2006 I sent to you a copy of a letter I had sent to Ms. Stevenson as the
Chairperson of the IBCC appealing the recommendation of the MDT.  On March 23,
2006 a staff member revealed to me that the IBCC approved me to continue to work in
the Braille Program.  I wrote a letter to you on March 26, 2006 requesting that you
inform me when I could go back to work.  As of this date, I have not yet received a
response from you.

On Wednesday, March 22, 2006 at approximately 09:30 am, I approached Mr.
Hosterman outside of the Law Library and I asked him the reason he had me suspended
and was having me reclassified out of the Braille Program.  He stated that I *knew the
reason*.  Mr. Hosterman responded by saying, "for the sneakers".  When I told him that I
had never received a write-up for the sneakers, Mr. Hosterman indicated that was why he
was using the classification process to remove me from the Braille Program.  This did not
make any sense to me, so I asked him to give me the real reason behind him taking my
job.  Mr. Hosterman then adamantly indicated that he has known me for a long time and
that I have trust issues and I have tried to control things on every job I have held in this
prison.  I asked him what was he talking about, because what he said simply is not true.
He responded by saying that if I didn't understand what he is talking about, I'm in greater
denial than he had thought and that I needed some serious help.  Mr. Hosterman went on
to say in a very sarcastic manner, maybe I could get another job some time in the distant
future, so I should lay back for now because as long as he had anything to do with it, he
would do everything he can to make sure that I would never get my job back.  Mr.
Hosterman then walked away from me.  I was left flabbergasted and astonished by the
active animus attitude Mr. Hosterman has displayed towards me. (Please take note: Mr.
Hostermans' statements and belief's about me are not from an accurate knowledge of my
character or work history.  My prison record contains evaluations and a number of letters
of commendation that attest to my attitude and work habits.  Mr. Hosterman's viewpoints
can only come from his own personal inclinations and insinuations from which he has
become my judge, jury and executioner.  I am left in an untenable position as a
consequence of the persecution by the hand of Mr. Hostermans' power, unless some type
of active intervention takes place.)

I enjoy the work I do for the Braille Program and I did nothing wrong to deserve
being reclassified from my job assignment.  I appeal to you to reconsider your veto in
preventing my return to work.  The reason(s) behind my reclassification is without merit
and serves no known penological interest.

EXHIBIT   J-4

Warden Thomas Carroll
Letter Continued, Page V

I also request that my brand new pair of sneakers be returned to me. Thank you very much for considering this letter. I will look forward to a response from you real soon.

Sincerely,

Sylvester Shockley

cc:    Commissioner Stan Taylor
       Deputy Warden Betty Burris
       Deputy Warden Pierce
       Major Scarborough
       Support Services Manager Sonya Smith
       Treatment Supervisor Ron Hosterman
       Ms. Evelyn Stevenson
       Mr. Kenneth Milbourne, Counselor Supervisor
       Counselor Kemp
       Ms. Sharon Haith
       Ms. Ann Hitchcock
       Mr. Sam Miller
       Lieutenant Porter
       File (2 copies)
       Capt. Haggard

EXHIBIT J-5



**DELAWARE HEALTH
AND SOCIAL SERVICES**

DIVISION FOR THE
VISUALLY IMPAIRED

April 25, 2006

Sylvester Shockley
#00090135
DE Correctional Center
1181 Paddock Rd.
Smyrna, DE 19977

Dear Mr. Shockley,

DE Correctional Center has made the decision to dismiss you from the Braille Program
because of the contraband found in your work area. The Men with a Message Program
will be affected by the loss of your knowledge and skills as an accomplished Braillist. I
wish you well.

If you provide me with an address I will have your Braille books mailed to the designated
person.

Sincerely yours,

Ann N. Hitchcock,
Volunteer Service Administrator 2
Division for the Visually Impaired

EXHIBIT K

Rec'd
5/3/06

Appendix E

## DELAWARE CORRECTIONAL CENTER — MEMORANDUM

TO:        Inmate _Shirleen Sylvester_ , SBI# _00055_ , Housing Unit _W_
VIA:       Counselor _____
FROM:    I.B.C.C.
DATE:      _3-16-06_
RE:        Classification Results

Your M.D.T. has recommended you for the following: _Cont Min_
_College  PKP - PC   Nursing Braille wkr_
_Rec. In threshold_

The I.B.C.C.'s decision is to:

_✓_ Approve _Min, College, PKP-PC, Braille worker, Thresholds_

_____ Not Approve _____

_____ Defer _____

_____ Recommend _____

_____ Not Recommend _____


**BECAUSE:**

| | Lack of program participation | | Time remaining on sentence |
|---|---|---|---|
| | Pending disciplinary action | | Prior failure under supervision |
| | Gradual phasing indicated | | Poor institutional adjustment |
| | Open charges | | Serious nature of offense |
| | Prior criminal history | | |

_____ Failure to follow your treatment plan in that you _____

_____ You present a current and continuous danger to the safety of staff, other inmates, or the good
order of the Institution. Explanation: _____

**OTHER:** _Rev 9/07_ _____


**ADDITIONAL COMMENTS:**

_____ Develop/continue treatment plan with counselor

You will be expected to address the following:_____


Copy to: Classification
            Inmate
            Institution File

EXHIBIT   L

Form #456
Revised 11/97

_Rec'd_
_May 16, 2006_

Sylvester Shockley
SBI # 090135, W-1 Building
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

May 30, 2006

Warden Thomas Carroll
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

RE: **Classification Veto**

Dear Warden Carroll:

Once again I find myself writing to you and pleading with you for your intervention on my behalf. On May 16, 2006 I received a Memorandum from the IBCC dated March 16, 2006 approving me to continue my job classification as a Braille worker. However, according to a couple of the inmates' currently working in the Braille Program, on or about March 21, 2006 Mr. Ron Hosterman paid a visit to the Braille Room and had a rather extensive conversation with Mr. Sam Miller and Ms. Ann Hitchcock. Immediately following Mr. Hosterman's departure, Mr. Miller announced to the workers in the room that I would not be coming back to work in the Braille Program.

On or about March 23, 2006 a certain Staff member (whom I would hope to allow to remain anonymous) informed me that you had vetoed the IBCC decision to allow me to return to my job assignment in the Braille Program. With regards to that information, I sent to you a letter dated April 3, 2006 requesting that you please inform me of the date when I could return to work. I have not yet received any type of response from your office or any of your designees.

On April 17, 2006 I sent to you a letter of appeal requesting an official response as to the particular reason(s) why you had decided to veto the recommendation made by the IBCC to reinstate my classification as a Braille Program worker. As of this date, I have not yet received any type of response from your office or any of your designees.

On May 3, 2006 I received a letter from Ms. Hitchcock stating, "Delaware Correctional Center has made the decision to dismiss you from the Braille Program because of the contraband found in your work area." Please find enclosed a copy of the letter from Ms. Hitchcock.

The facts of this situation as I understand them to be are as follows: No contraband of any type ever existed or was ever found in my work area (there was however, a razor blade found in my work area during the shakedown, but upon further investigation it was determined and verified that the razor blade was actually a 'tool'

EXHIBIT M-1

Warden Thomas Carroll
Letter Continued, Page 2

utilized during routine work performances).   The Adjustment Board found me to be innocent of any type of wrongdoing, including the possession of contraband.

On the date the IBCC met to hear my case, Mr. Hosterman made a rare appearance before the Board for the expressed purpose of monitoring the decision making process the IBCC panel would use to determine whether or not I would be authorized to return to my job in the Braille Program.  According to a Staff Member present at that hearing, when the approval was given to return me to my job, Mr. Hosterman left in a huff and then went to see you for the purpose of convincing you to veto the IBCC decision.  I believe that Mr. Hostermans' endeavor to convince you to veto the IBCC decision to return me to work was a fulfillment of the threat that he had made to me back on March 22, 2006.  Please recall that I referenced this incident in my appeal to you dated April 17, 2006.

I also believe that Mr. Hosterman has undermined the classification system and in so doing, he has used his position to negatively influence your impartiality, thereby imposing upon me an unusual and significant hardship in relation to the ordinary incidents of prison life.

Therefore, I am appealing to you once again, requesting a fact-finding of the information you had received prior to vetoing my return to my job classification.  I also request that you withdraw your veto and reinstate me to my classified job assignment.

Thank you very much for considering this letter.  I will look forward to a response from you real soon.

Sincerely,

Sylvester Shockley

cc:    Mr. Paul Howard, Bureau Chief
       File

From:    Robert D Miller                             May 31, 2006
             "MEN WITH A MESSAGE"
             Braille Program
             Delaware Correctional Center

To:       MR. SYLVESTER SHOCKLEY
             SBI # 00090135

Subject:   Fair Well

Dear Mr. Shockley;

Delaware Correctional Center has made the decision to dismiss you from the Braille Program. It is sad that we part under these circumstances.

Your presence has been a large part of the program's landscape. We've been through many transitions and you will be missed through our future transitions, new room, new material, new computers, new Braillewriter programs and more. Your work has been greatly appreciated.

Should our paths cross, know that we all wish you well and the best that the future can bring to you.

Sincerely yours,

Robert D Miller
Braille Instructor – DCC

EXHIBIT N

Rec'd 6-2-06

I/M *Sylvester Shockley*
SBI# 690135 UNIT W
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

Clerk, U.S. District Court
Lockbox 18
844 N. King Street
Wilmington, DE
19801

U.S.M.S.
X-RAY